**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

BRIAN WRIGHTSON, SHARON      :
WRIGHTSON, LINDA            :
POPLAWSKI, and RYAN         :
SPINELLO,                     :
                         :
      Plaintiffs,          :
                         :      CIVIL ACTION NO. 3:CV-04-0038
      v.                :
                         :        (JUDGE CAPUTO)
LACKAWANNA COUNTY,     :
ROBERT C. CORDARO, in his   :
individual capacity, A.J.      :
MUNCHAK, in his individual   :
capacity, and JAMES FINAN, in :
his individual capacity,     :
                         :
      Defendants.       :

## MEMORANDUM

Presently before me are Defendants' Motion for Summary Judgment (Doc. 67), Defendant James Finan's Motion for Summary Judgment Concerning Liability for Acts Prior to Being a State Actor (Doc. 72) and Plaintiffs' Motion to Strike the Declaration of Anthony Bernardi From the Summary Judgment Record (Doc. 91). For the reasons set forth below, I will grant in part and deny in part Defendants' motion (Doc. 67), deny Defendant Finan's motion (Doc. 72) and deny Plaintiffs' motion (Doc. 91). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## BACKGROUND

On January 8, 2004, Plaintiffs Brian Wrightson, Sharon Wrightson, Linda Poplawski and Ryan Spinello filed a Complaint (Doc. 1) against Lackawanna County's newly elected majority Commissioners Robert C. Cordaro and A.J. Munchak. Plaintiffs allege that they were discharged by the Defendants because they were involved in the most recent

campaign on behalf of Defendants' opponents.   Plaintiffs also moved for a Temporary

Restraining Order (Doc. 3), which was granted, and subsequently, a Preliminary Injunction,

which was denied.   (Doc. 4.)   After the preliminary injunction hearing, I dissolved the

temporary restraining order on January 23, 2004, predominantly on the basis that the

testimony which I heard did not convince me that the Plaintiffs were likely to succeed on the

merits.   (Doc. 17.)

At the preliminary injunction hearings, which ended on January 20, 2004, the following

evidence was adduced and were recited in my January 23, 2004 opinion:

> Prior to January 5, 2004, Plaintiffs were employed by the County.  Linda Poplawski, designated as a "confidential secretary," was a legal secretary in the Solicitor's Office. Ryan Spinello was the County's Website Coordinator. Brian Wrightson was a Technical Center Manager in the Office of Information Services.[1]  Sharon Wrightson was the Fiscal Administrative Assistant in the Coordinated Transportation System.[2]   The Plaintiffs' salaries ranged from $20,000 to $36,000 per year.

> On January 5, 2004, Ms. Poplawski, Mr. Wrightson, and Ms. Wrightson received a termination letter while at work. The bodies of the letters were identical and read: "As of the end of the workday on January 5, 2004 your position with Lackawanna County is terminated.  If you require, we can outline the reasons for this action.  Thank you." (Pls.' Exs. B and F.)   The letters were signed by Robert C. Cordaro, Lackawanna County Commissioner.  Mr. Spinello received an identical letter on January 6, 2004, via certified mail, although the letter said he was terminated effective January 5, 2004.  (Pls.' Ex. D.)

> Immediately preceding the Plaintiffs' termination was the swearing in of Robert C. Cordaro and A.J. Munchak as

---

[1] Brian Wrightson is Sharon Wrightson's son.

[2] There was also an operations administrative assistant in this department.

2

Lackawanna County Commissioners (collectively hereinafter Commissioners).   Messrs. Cordaro and Munchak are both Republicans and together they constitute a majority of the three commissioners.  After being elected, but before being sworn in, the Commissioners learned that the County was running a budget deficit.  The deficit has steadily increased since November and is in excess of nine million dollars.  In consultation with their transition team, the Commissioners decided to eliminate some County jobs, downsize some departments, and restructure other departments as one way to save County money.

The first round of job cuts occurred on January 5, 2004, and included the Plaintiffs.  Also terminated on that day were approximately twenty-two policy-makers.  Three days later, the Plaintiffs filed the instant motion, alleging that they were terminated for political reasons.  The Plaintiffs are all registered Democrats, and all participated in campaigning on behalf of Democratic candidates Joseph Corcoran and Randy Castellani in the Lackawanna County Commissioners election.  Messrs. Corcoran and Castellani's opponents in the November, 2003, election were Messrs. Cordaro and Munchak.  Mr. Corcoran lost, and Messrs. Cordaro and Munchak were victorious and became the new majority party commissioners.   Mr. Castellani is the minority party commissioner. Mr. Cordaro was the minority party commissioner in the prior administration.

Notwithstanding the County's budget deficit and the layoffs of Plaintiffs, the County has hired some new employees. Anthony Walters, a registered Republican, started work on January 6, 2004, as a Computer Hardware Technician in the Office of Information Services.  Mr. Walters filled an existing department vacancy and is responsible for repairing County computers and printers. Brian Wrightson also repaired County computers and printers, although it was not his primary responsibility.  According to David Lloyd, Director of Information Services and supervisor to both Brian Wrightson and Mr. Walters, the work being performed by Mr. Walters is different from Mr. Wrightson's responsibilities.  To save money, Mr. Wrightson's position was eliminated and Mr. Lloyd will subsume any remaining duties.

3

> The County also hired Roark Aston as an Assistant Press Secretary.   Mr. Aston is a registered Republican and worked on the Cordaro/Munchak campaign.  Mr. Aston started working on January 6, 2004, and he is responsible for dealing with press related matters.  Mr. Aston is also responsible for updating the County's website, which was formerly the responsibility of Plaintiff Ryan Spinello.  The position of Website Coordinator was eliminated to save money, and the responsibility of updating the website was transferred to a newly created department where Mr. Aston works.  During the two weeks he has worked for the County, Mr. Aston has spent a total of thirty minutes on website-related matters, whereas Spinello spent approximately fifty to sixty percent of his time on website-related matters.  The County also pays an outside vendor to assist with website related issues, mainly programming and other technical matters.

(*Id.* at 2-4.)

Plaintiffs subsequently filed an Amended Complaint (Doc. 19) on February 2, 2004, adding Paul Taramelli as a Defendant and asserting claims under 42 U.S.C. § 1983 for violations of their First Amendment (Count I) and Fourteenth Amendment Due Process (Count II) claims against Cordaro, Munchak and Taramelli and for violation of their constitutional rights against Lackawanna County (Count III).  Plaintiffs also asserted a claim under the Pennsylvania Sunshine Act, but that has since been withdrawn, as have claims against Taramelli in his "official capacity." (Doc. 25 at 5.)  On February 2, 2004, Defendants filed a Motion to Dismiss (Doc. 20), which I denied on April 15, 2004 because I found it was premature to determine whether the remaining Defendants' conduct was legislative, entitling them to legislative immunity (Doc. 27).

Plaintiffs subsequently filed a Second Amended Complaint (Doc. 59) on November 17, 2005,  where Plaintiff Sharon Wrightson added James Finan as Defendant to Count I of the Plaintiffs' claims.  Thereafter, Defendants filed motions for summary judgment (Docs. 67, 72)

4

and Plaintiff filed a motion to strike Anthony Bernadi's declaration from the summary judgment record (Doc. 91).  The matters have been fully briefed and now ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *See id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that 1) there is no genuine issue of material fact and 2) she is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d Ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire

record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257. The court need not accept mere conclusory allegations or denials taken from the pleadings. *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**1.  Defendants' Motion for Summary Judgment**

### a. Count I - First Amendment

Plaintiffs allege in Count I of their Second Amended Complaint that Defendants Cordaro and Munchak violated their First Amendment rights by terminating their County employment. (Doc. 59 at ¶ 32.) Plaintiff Sharon Wrightson further alleges that Defendant Finan recommended her termination to make room for Defendants' political associate. (*Id.* at ¶ 33.) The Supreme Court held in *Elrod v. Burns* that a discharge of a public employee because of his or her political affiliation is a violation of the First Amendment and, therefore, a violation of 42 U.S.C. § 1983. 427 U.S. 347, 373 (1976). The Third Circuit Court of Appeals, in line with Supreme Court precedents, developed a three-prong test in political patronage cases. Hence, in order to succeed on their claim, Plaintiffs must prove that: (1)

6

they worked for a public agency in a position that does not require a political affiliation; (2) they maintained an affiliation or nonaffiliation with a political party; and (3) their political affiliation or nonaffiliation was a substantial or motivating factor in the adverse employment decision. *Goodman v. Pa Tpk. Comm'n,* 293 F.3d 655, 663-64 (3d Cir. 2002) (citations omitted).   The third prong of this test requires that Plaintiffs produce sufficient evidence to show that the Defendants knew of Plaintiffs' political affiliation. *Id.* at 664.   If the Plaintiffs can make out a prima facie case by proving these three elements, the burden then shifts to the Defendants to show, by a preponderance of the evidence, that it would have made the same decision even in the absence of the protected affiliation. *Id.*

In the instant case, Defendants are moving for a summary judgment because they argue that Plaintiffs cannot meet the third prong of their prima facie case.  (Doc. 68 at 22.) Namely, that Plaintiffs cannot prove their termination was a result of their affiliation with the Democratic Party.  In aid of their argument that there is "no legally cognizable evidence in the record that Plaintiffs were terminated for political reasons" (*Id.* at 23), Defendants point out that each of the Plaintiffs have stated so in their own deposition. (*Id.*) (quoting Sarah Wrightson Dep. 45, 46, 125; Brian Wrightson Dep. 95-97; Poplawski Dep.132-33; Spinello Dep. 57, 87).   Defendants argue that the evidence shows that more Democrats were retained than were discharged.  (Doc. 68 at 24.)  Defendants argue that the Plaintiffs were only four (4) of over a hundred employees whose positions were eliminated due to an emergent budget crisis. (*Id.*) Defendants also point out that the only evidence the Plaintiffs proffered is that other active Democrats, who were similarly situated to Plaintiffs, were not terminated. (*Id.*)

7

Plaintiffs argue that Defendant Cordaro violated their First Amendment by eliminating their jobs to make room for politically favored candidates.  More specifically, "Sharon Wrightson claims she was fired to make room for Aaron Sepkowski; Brian Wrightson claims he was fired to make room for Anthony Walters; Ryan Spinello claims he was fired to make room for Roark Aston; and Linda Poplawski claims she was fired to make room for Heather McClenen and Julie Verdon."  (Doc. 85 at 6.)    Plaintiffs argue that there is sufficient circumstantial evidence to support their First Amendment claim, five of which are outlined in their brief.  In short, the Plaintiffs state that: (1) Plaintiffs were not discharged for economic reasons because there was a net increase in jobs and payroll expenditures (*Id.* at 10); (2) the Transition Team did not impact Defendant Cordaro's decision to discharge Plaintiffs (*Id.* at 11);  (3) Defendant Cordaro's preliminary injunction hearing testimony is contradicted by evidence, mainly that the list he relied on to discharge Plaintiffs did not exist at the time and his reasons for hiring Plaintiff's replacements are contrary to the evidence (*Id.* at 12-13); (4) Plaintiffs discharge occurred at the same time and in the same manner as the high-level political employees (*Id.* at 13); and (5) Plaintiffs' replacement hires worked in Defendants Cordaro and Munchak's campaign and started their employment within days of Plaintiffs' discharge (*Id.* at 14-15).

As has been noted many times, there is often no direct evidence of § 1983 constitutional violations.  Circumstantial evidence becomes the method of proof, and therefore, a review of the evidence is called for.  The Third Circuit Court of Appeals has stated that in analyzing whether Plaintiffs have met their burden of establishing the third prong of their First Amendment prima facie case, they must prove that Defendants knew of their political activity

8

and this was the reason they were terminated.  In *Contini v. Cranmer,* the Third Circuit Court of Appeals stated,  "It is well-settled that implicit in this third prong is a requirement that the plaintiff produce evidence to show that the defendant knew of the plaintiff's political persuasion."  No. 93-4736, 2004 U.S. App. LEXIS 24903, at *5 (3d Cir. Dec. 2, 2004).  This is what the Third Circuit Court of Appeals coined as the two part "knowledge" and "causation" requirement of the third prong.  *Id.*  (citation omitted).

Plaintiffs are all registered Democrats and worked for Defendants' opponents, Democratic candidates Joseph Corcoran and Randy Castellini, in the November 2003 Lackawanna County Commissioner election.  (Doc. 69 at 3.)  Plaintiffs are long time Democrats who were active in their campaign against Defendant Cordaro and Cordaro admitted knowledge of Plaintiffs Brian and Sharon Wrightson's political activities during the preliminary injunction hearing.  (Doc. 85 at 8; Doc.81-1 at ¶¶ 127, 153.)  As to Plaintiff Spinello, he stated in his deposition that sometime during the 2003 election season, Cordaro referred to him as Cordaro's political opponents', presumably Corcoran/Castellini, "personal photographer."  (Doc. 81-1 at ¶ 190; Doc. 70, Ex. 11, Spinello Dep. 59:13-25, 60-62, 63:1-3, June 14, 2005.)

There is also circumstantial evidence that Cordaro was aware of Plaintiff Poplawski's political association.  As evidence of Poplawski's involvement in the Corcoran/Costellini campaign, Plaintiffs point to Poplawski's testimony at her deposition as well as during the preliminary injunction hearing.  (Doc. 81-1 at ¶ 217.)  During the preliminary injunction hearing, she testified that her activities in relation to the commissioners' campaign were the following:  "we sent out mailings, I worked the phone banks.  We attended, you know, the brunches and dinners.  I worked the polls on election day, I had signs in my yard, bumper

stickers." (Doc. 70, Ex. 8, Poplawski Test. 83:23-25, 84:1-3, Jan. 20, 2004.)   Poplawski testified that people she worked with knew she was working on the Corcoran/Castellani campaign.   (*Id.* at 84:4-7.)   When asked about who else worked with her during her employment under the Corcoran and Castellani organization, she testified that there were four secretaries in total that "[t]here was myself, Commissioner Corcoran's secretary, Commissioner Castellani's and Commissioner Cordaro's, four."   (*Id.* at 84:14-21.)   In her deposition testimony, she stated that her involvement with the Corcoran/Castellani campaign was as follows: "I put up signs in my yard, I went to some of their events, you know, paid money for tickets."   (Doc.70, Ex.10, Poplawski Dep. 54:14-17, June 14, 2005.)   Given Cordaro's position as minority commissioner in the previous administration, there is circumstantial evidence of his awareness of Poplawski's political affiliation.

As for Defendant Munchak, Plaintiffs stated in their Counterstatement of Material Facts in Opposition to Defendants' Summary Judgment Motions, that "Plaintiffs admit that 'Commissioner Munchak did not know of the Plaintiffs' termination prior to their termination.' Paragraph 67's remaining statement that Munchak 'did not know [Plaintiffs'] political affiliations' is denied as immaterial in view of Plaintiffs' withdrawal of all claims against Munchak." (Doc. 80 at ¶ 67.)

Plaintiff Sharon Wrightson's claim against Defendant Finan will be addressed separately in Section 2 of this opinion.   Therefore, the question that remains is whether Cordaro's knowledge of Plaintiffs' political activities was a substantially motivating factor in terminating their employment.

Plaintiffs were discharged on the first day of the new administration.   At the preliminary injunction hearing, Defendant Cordaro testified that upon learning the extent of the budgetary

crisis, after the November election but before taking office, Cordaro asked the personnel director to provide him with a list of jobs that could be eliminated.  (Doc. 17 at 8; Doc. 73-2, Finan Test. 198:6-21, Jan.20, 2004.)  In a separate motion, Plaintiff moved to exclude the declaration of Anthony Bernardi from the summary judgment record.  (Doc. 91.)   This will be addressed separately in Section 3 of this opinion.  In short, the list that Bernardi created is allegedly one of the lists that Defendant Cordaro had  relied on in making his termination determination.   Plaintiffs moved to preclude Bernardi's declaration as contradictory and because his testimony relating to the list is material to the disposition of the summary judgment.  (Doc. 92-1 at 4-5.)   Both sides present arguments as to whether the list that Defendant Cordaro relied on was created before or after the discharge of Plaintiffs and hence, whether this list was relied on by Cordaro in discharging them.  Defendants state that Defendants Cordaro and Munchak relied upon lists of positions to be eliminated, one of which could have been the list in question or not.  (Doc. 96-1 at 3.)  I find that this is an issue of material fact to be determined by a fact finder.

Defendant Cordaro stated that he had the transition team review the various departments within the County government to determine where positions might be eliminated or combined.  (Doc. 17 at 8.)  Along with many active Democrats not being discharged, Defendants submitted evidence that Plaintiffs were only four (4) of ninety-one (91) employees who were terminated.  (Doc. 89-1 at 11.)  These terminations saved the County $1,479,445.  (*Id*.)  On the other hand, Plaintiffs' argue that their salaries are relatively small, that the County hired new employees or that expenditures were not reduced.  Plaintiffs allege that Defendant Cordaro's unilateral action of terminating Plaintiffs at the same time and in the same manner as other high-level appointees and then hiring people who worked

in his campaign to replace them shows that Defendant Cordaro was politically motivated. (Doc. 85 at 13-14.)

At the preliminary injunction hearing, Defendant Cordaro testified that Plaintiffs' positions were eliminated due to the County's poor financial situation. While Plaintiffs have not proffered any evidence to the contrary, as noted previously, there is rarely direct evidence of such politically inspired causation. While Plaintiffs did not demonstrate that Cordaro acted outside the normal deliberative process when making this determination, they have, by the foregoing raised a genuine question of material fact as to whether the discharges were politically motivated. There is, therefore, a genuine issue of material fact as to whether the discharges were politically motivated.

There is a lack of evidence classifying the Plaintiffs as particularly significant political adversaries. There is no explanation or evidence as to why Defendant Cordaro decided to discharge the Plaintiffs over other County employees who are also Democrats. There is no evidence demonstrating how Plaintiffs' campaign-related work or their monetary contribution were more significant than other campaign workers who remain employed with the County. Evidence opposing this proposition is the commencement of work by Plaintiffs' replacements who were campaign workers for Defendants. It is for the fact finder to determine whether these particular Plaintiffs were singled out for political discharge.

Plaintiffs have proffered sufficient evidence from which a fact finder could reasonably believe that their political affiliation was a substantial or motivating factor in their discharge by Defendant Cordaro or disbelieve the County's articulated reason. Therefore, Defendant's motion for summary judgment will be denied with regards to Plaintiffs' First Amendment, political discharge claim against Defendant Cordaro.

### b.  Count II - Fourteenth Amendment

Plaintiffs allege in Count II of their Second Amended Complaint that Defendants Cordaro and Munchak violated their Fourteenth Amendment Due Process Rights under 42 U.S.C. § 1983 by depriving them of their constitutionally protected interest in their County employment. (Doc. 59 at ¶ 39.)  To establish a cause of action for a procedural due process violation, Plaintiffs must first prove that a person acting under color of state law deprived them of a protected property interest; and second, they must show that the procedures available to them failed to provide them with due process of law.  *See, Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).  To have a property interest in a job, a person must have a legitimate entitlement to such continued employment.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  State law determines whether such a property right exists. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).  In Pennsylvania, public employees have an "at-will status and are subject to summary removal by the employing agency."  *Haynes v. Logan Assistance Corp.*, No. 89-3952, 1990 U.S. Dist. LEXIS 1145, at *7 (E.D. Pa. 1990) (citing *Cooley v. Pennsylvania Hous. Finance Agency*, 830 F.2d 469, 471 (3d Cir. 1987). However, at-will employees can demonstrate a property interest in retaining their jobs by showing an enforceable expectation of continued employment or some guarantee of continued employment extended by the employing municipality.  *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 233 (M.D. Pa. 1995).  A "for-cause" termination provision in an employment agreement may establish a protected property interest.  *Linan-Faye Constr. Co. v. Housing Auth.*, 49 F.3d 915, 932 (3d Cir. 1995).

In the present case, Defendants argue that the Collective Bargaining Agreement ("CBA")

does not vest Plaintiffs with property interest in their jobs because (1) Sharon Wrightson never joined the union and Brian Wrightson, Spinello and Poplawski did not join until after the November election; (2) Plaintiffs are excluded as a manager, first line supervisor and confidential secretary; and (3) Plaintiffs were discharged prior to ninety (90) days when personnel or grievance rights for Plaintiffs Spinello, Poplawski and Brian Wrightson arguably vested.  (Doc. 68 at 36)  Defendants also argue that Plaintiffs were given notice and opportunity to be heard. (*Id.* at 37-38.)  Lastly, Defendants argue that  they did not act deliberately, arbitrarily and capriciously in discharging Plaintiffs but as a result of an emergent budge crisis.  (*Id.* at 39-40.)

Conversely, Plaintiffs argue that Spinello, Poplawski and Brian Wrightson were union members and that all Plaintiffs were covered by the CBA.  Plaintiffs purport that (1) Sharon Wrightson was covered by the CBA between the County and the SEIU (Doc. 81-1 at ¶ 134); (2) Brian Wrightson was a member of SEIU Local 668 (*Id.* at ¶ 160); (3) Spinello was a member of the SEIU Local 668 (*Id.* at ¶ 189); and (4) Poplawski was a member of SEIU Local 668 (*Id.* at ¶ 216).   The letter written by Joseph A. O'Brien to Joseph T. Wright on December 9, 2003[3] explains that "Lackawanna County employees are protected by the [CBA] which prevents termination of any employees except for just cause." (Doc. 82-6 at 2.) In his letter, Mr. O'Brien explains that confidential employees, management employees, supervisors and first level supervisors, as defined in 43 P.S. § 1101.301, are excluded from the CBA.  (*Id.*)  He also states that whether exclusion applies depends on an employee's

---

[3] Joseph O'Brien of law firm Oliver, Price & Rhodes wrote a letter to Joseph Wright, Jr. of Wright & Associates in light of news that "there may be plans by the new county administration to terminate the employment of a number of present county employees." (Doc. 82-6.)

actual duties rather than their job descriptions but that in his view, "other than some department heads, such as the Chief Solicitor, most department heads and all other employees of Lackawanna County are protected from termination without just cause by the provisions of the [CBA]." (*Id.*)

The terms of the CBA are outlined in the Contract Agreement by and between The County of Lackawanna and the Service Employees of International Union AFL-CIO, Local 668, covering a time period between January 1, 2001 to December 31, 2004.  (Doc. 77, Ex. 72.)  Plaintiffs state that Sharon Wrightson is covered by the CBA whether or not she pays union dues.  (Doc. 81-1 at ¶ 134.)  This, however, is not material to the disposition of this claim.  I conclude that the CBA does not vest the Plaintiffs with any property interest in their employment.

There are two general types of contract rights that are recognized as property protected under the Fourteenth Amendment:

> (1) where "the contract confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits; or (2) where "the contract itself includes a provision that the state entity can terminate the contract only for cause."

*Linan-Faye Constr. Co., Inc.,* 49 F. 3d at 932 (quoting *Unger v. Nat'l Residents Matching Prog.,* 928 F.2d 1392, 1399 (3d Cir. 1991)).  Other than Mr. Joseph A. O'Brien's December 9, 2003  letter stating otherwise, I have found nothing in the CBA that states that the county can terminate Plaintiffs' employment only for cause.  Furthermore, Article 2 (A)(4) of the CBA states that the "determination of Lackawanna County's financial, budgetary, accounting and organization policies and procedures" are "not subject to the collective bargaining process

15

and are inherent in management." (Doc. 77, Ex. 72 at 2-3.)  Considering the fact that the CBA does not state that an employee may be terminate only for cause together with the fact that Defendants have also stated that the termination was due to the emergent financial crisis in the County, I find that Plaintiffs have failed to establish a genuine issue of material fact with respect to whether Plaintiffs had a protected property interest in their employment.

Therefore, I will grant Defendants' motion for summary judgment as to Plaintiffs' Fourteenth Amendment, due process claim.

### c.  Count III - Municipal Liability

Defendants argue that the County is entitled to summary judgment as to Plaintiffs' § 1983 claims because they have not established municipal liability.  (Doc. 68 at 41.) Plaintiffs allege in Count III of their Second Amended Complaint that under 42 U.S.C. § 1983, the County is vicariously liable for the constitutional violations of it's employees, Defendants Cordaro, Munchak and Finan.  (Doc. 59 at ¶ 44.)  For a municipality or other government entity to be liable under 42 U.S.C. § 1983, Plaintiffs must establish: (1) a deprivation of a constitutionally protected right; (2) resulting from a policy, practice, or custom.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691-94 (1978).   As a municipal entity, the County may only be held liable for the alleged constitutional infractions perpetrated upon Plaintiff if "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The requisite causal link may be shown in two ways.  First, where the municipal entity is alleged to have caused the violation of the aggrieved parties' constitutional rights through

"a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001) (quoting *Monell*, 436 U.S. at 690).   It is of note that the policy of a municipality can be created by the conduct of an individual with final, unreviewable policy making authority. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).   The second manner in which a party may demonstrate the requisite causal link is by demonstrating that the alleged constitutional violations were caused by a custom or usage of the municipality which has "the force of law by virtue of the persistent practices of [municipal] officials." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970).

Plaintiffs assert that since Defendant Cordaro enjoyed final, unreviewable authority to terminate Plaintiffs' employment, "municipal liability can be predicated on Cordaro's conduct." (Doc. 85 at 19.)   Since there are issues of material fact as to whether Defendant Cordaro followed the normal deliberative process required by the office when making the determination to terminate Plaintiffs and hire their replacements, summary judgment will be denied as to the municipal liability of the County.   Additionally, summary judgment will not be granted as to Defendant Finan.

**2.  Defendant James Finan's Motion for Summary Judgment as to Count I Brought by Plaintiff Sharon Wrightson**

Plaintiffs filed a Second Amended Complaint (Doc. 59) on November 17, 2005, in which Plaintiff Sharon Wrightson added Defendant Finan to Count I of the Plaintiffs' claims. Defendant Finan filed a separate motion for summary judgment arguing that as a matter of law, there is no § 1983 liability for non-employees.  (Doc. 73-1 at 14.)   He states that he was

not a state actor at the time he rendered his recommendation and he is not the person who terminated Sharon Wrightson. (*Id.*) Furthermore, he argues that Sharon Wrightson cannot meet the third prong of the prima facie case for political discharge against him. (*Id.*)

Plaintiffs argue that Defendant Finan did make the decision to terminate Plaintiff Sharon Wrightson's employment. (Doc. 84-1 at 3.) As evidence, Plaintiffs point to Finan's June 2005 deposition testimony where he stated that he made the decision to eliminate Sharon Wrightson's position. (*Id.*) (citations omitted). Plaintiffs argue that the basis for Plaintiff Sharon Wrightson's First Amendment claim is not the County Home Rule Charter but § 1983, hence, it does not matter whether the County Home Rule Charter gives him the authority to terminate Sharon Wrigthson or not. (Doc. 84-1 at 4.) Instead, Plaintiffs argue that to find Finan individually liable, the issue is whether he had sufficient personal involvement in Sharon Wrightson's termination. (*Id.* at 5.) Plaintiffs also argue that Finan was a state actor since he was the decision maker and he was an employee at the time. (*Id.* at 6.) Plaintiffs point out that at the time of Sharon Wrightson's termination on January 5, 2004, Finan was working for the County as the County Transportation Director. (*Id.*)

Plaintiffs further argue that circumstantial evidence supports their contention that Finan terminated Sharon Wrightson's employment to make room for Sepkowski. In support of their argument, Plaintiffs point out that (1) Sepkowski did substantial work for Finan, who was running the Cordaro-Munchak campaign in the North Pocono area (*Id.* at 10.); (2) Sharon Wrightson was not discharged for financial reasons since Sepkowski was hired at the same salary and in fact, the Coordinated Transportation total job count and payroll expenditures increased (*Id.* at 10-11); (3) Sharon Wrightson was not discharged for reorganizational

18

reasons since she could have performed the Operations Administrative Assistant duties that Sepkowski was hired to perform (*Id.* at 11-12); (4) Additionally, Plaintiffs argue that reorganization is not a valid reason since there is no evidence of deliberation (*Id.* at 12); and (5) temporal proximity between Sharon Wrightson's termination and Sepkowski's hiring (*Id.* at 13).

Finan states that he recommended that the Fiscal Manager Position be eliminated to Transition Team Paul Taramelli, not Cordaro, prior to January 5, 2004.  (Doc. 88 at 4; Doc.73-3, Finan Dep. 67:1-14, June 23, 2005.)  Finan argues that this was prior to when he and Taramelli were state actors.  (Doc. 88 at 4; Finan Dep. 91:4-13.)  Finan also argues that he is not a politician but a career public servant in the transportation field.  (*Id.* at 10.)  Finan points out that Sepkowski's deposition testimony provided evidence that Sepkowski's role in the Cordaro/Muncak campaign was only as a poll watcher.  (*Id.*) (citing Sepkowski Dep. at 33).  Finan also states that the position of Fiscal Manager was eliminated.  (*Id.* at 10.)  He also states that he is the Director of Transportation and that Mr. Tomcho, a politically active Democrat, is the Director of CTR.  (*Id.*)  Finan points out that there was significant reorganization at the time of Sharon Wrightson's discharge, that she was one (1) of ninety-one (91) employees who were terminated.  (*Id.* at 11.)  Finan states that the reorganization resulted in a net payroll budget cut of $1,479,445. (*Id.*)  Finan contends that Plaintiffs have chosen to forego the possibility of being rehired since they prematurely sued the County three (3) days after their discharge.  (*Id.*)  Finan further states that he did not believe Sharon Wrightson would have been suited for the Operation Manager's position.  (*Id.* at 12.)

Plaintiffs argue that Finan can be held liable under § 1983 because he met the requisite

19

personal involvement requirement for liability as he acted under color of state law regardless of whether he had actual statutory authority to terminate Sharon Wrightson or not.  (Doc. 84-1 at 5) (citing *Bennis v. Gable*, 823 F.2d 723, 733 n.11 (3d Cir. 1987)).  When Finan made his recommendation to terminate Sharon Wrightson's position, he has yet started work with the County.   Thus, Finan did not officially act as a state actor when he made his recommendation.   Even so, the Supreme Court has held that a § 1983 claim can be maintained against a private party acting in a conspiracy with a state official to deprive others of constitutional rights.  *Melo v. Hafer,* 912 F.2d 628, 639  (3d Cir. 1990).  In fact, there are three ways in which a private actor or entity will be treated as a state actor: (1) the public function test where the entity acted with the help of or in concert with state officials; (2) where the private entity acted with the help of or in concert with state officials; and (3) where the private actor or entity and the state officials are so interdependent with each other as to be participants in the deprivation.  *Killian at Poconos, LLC. v. Saw Creek Estates Comm. Assoc., Inc.,* 275 F. Supp. 2d 578, 589 (M.D. Pa. 2003.)  In the present case Finan argues that he made his recommendations for the layoffs, through Taramelli, prior to starting his job on January 5, 2004.  (Finan Dep. 74:12-20.)  *See Melo.,* 912 F.2d at 639 ("When neither of the parties who allegedly conspired is a state official, there is no state actor to supply even a colorable basis for investing a private actor with a state mantle, even if one of the parties later becomes a state official.").  There is a genuine issue of fact, however, whether Finan only spoke with Taramelli or not.  Additionally, even if he did, that fact alone does not preclude the conclusion that Finan still had involvement in the termination of Sharon Wrightson and the hiring of her replacement.

Plaintiffs argue that where "a plaintiff alleges that a defendant terminated her

employment in order to make room for a politically favored job candidate, the plaintiff's political associations and activities are irrelevant to the analysis." (Doc. 84-1 at 8.) I disagree. In *Larskaris v. Thornburgh,* the Third Circuit Court of Appeals opined that there has to be sufficient evidence from which a jury could reasonably find that plaintiffs political affiliation was a substantial or motivating factor in their discharge and in doing so, that the defendants knew of plaintiffs' political persuasion. 733 F.2d 260, 265 (3d Cir.1984). The Third Circuit Court of Appeals found it to be insufficient evidence that plaintiff was replaced by another employee of the opposing political party:

> Laskaris and Skapura testified that they were Democrats when discharged. Laskaris, but not Skapura, presented evidence that his replacement (Diehl) was a republican. But there is simply insufficient evidence to show that any of the defendants *knew* that Laskaris and Skapura were Democrats. Without that knowledge as a predicate, the fact that Diehl, who was a Republican, replaced Laskaris, cannot by itself support an inference that Laskaris's discharge was politically motivated.

*Id.* Thus, Plaintiffs must still establish that Finan's recommendation that Sharon Wrightson's position be terminated was politically motivated.

In the preliminary injunction hearing, Finan testified that during the discussion in December regarding the elimination of the fiscal position, Sharon Wrightson's name never surfaced and the discussion was around the title of the position rather than the person holding it. (Doc.73-2, Finan Test. 203:11-21.) Finan testified that he did not know of Sharon Wrightson's involvement with the Corcoran/Castellini campaign, what political party she was registered with and did not even know what position she occupied at the County at the time he recommended that her position be eliminated. (*Id.* at 205:6-17.) Finan did not state

otherwise in his June 23, 2005 deposition.  (Doc.73-3.)   Finan did state, however, that he remembered Sharon Wrightson from his days at the COLTS.  (Finan Test. 205: 2-5.)  He was also allegedly making his decision in consultation with people who knew Sharon Wrightson.   Additionally, while the fact that Finan hired her replacement alone cannot establish that her political association was a motivating reason, it does create questions of material fact. I find that there is a genuine issue of material fact as to whether Sharon Wrightson's political association was a significantly motivating reason why Finan recommended that her position be terminated.

Therefore, Defendant Finan's motion for summary judgment will be denied.

### 3.  Plaintiff's Motion to Strike the Declaration of Anthony Bernardi From the Summary Judgment Record

Plaintiffs moved to strike the February 1, 2006 declaration of Anthony Bernardi from the summary judgment record.  (Doc. 91.)  Plaintiffs argue that Bernardi's declaration was prepared after the close of discovery and moreover, contradicts his prior deposition testimony without a good explanation for the contradiction.  (Doc. 92-1 at 1.)  At issue is the "list" that Defendant Cordaro stated that he relied on in determining which positions should be eliminated.  This "list" titled "Proposed Positions To Be Eliminated" is allegedly the list that Defendant Cordaro relied on.  (*Id.* at 4; Doc. 77, Tab 59.)  The main issue is whether this specific list was the one relied on by Defendant Cordaro and if so, whether it was created before or after January 5, 2004.  Plaintiffs contend that Bernardi originally testified that he did not start analyzing County personnel issues nor consulted anyone concerning the January 5, 2004 termination prior to that date. (*Id.* at 4.)   Bernardi has stated in his deposition that he did not start working on the list at issue until after January 6, 2004.  (*Id.*

at 5) (citing to Bernardi Deposition, Doc. 70, Tab 15).  In Bernardi's declaration, he submits that he did prepare the list at issue prior to January 5, 2004 and that he was just confused at the time of his prior deposition.  (*Id.* at 6;  Doc. 87 Ex., E.)

Affidavits contradicting an earlier deposition can be stricken by the court. *See Martin v. Merrell Down Pharm.,* 851 F.2d 703 (3d Cir. 1988).  In cases, however, where the contradiction was due to confusion, subsequent affidavits can be submitted to correct the error. *Shetterly v. Sony Elec.,* No. 02-862, 2005 WL 2219473, at *2, n.7 (W.D. Pa. Sept. 13, 2005); *Gardner v. McGroarty,* No. 99-1634, 2002 WL 32107213, at *2 (M.D. Pa. Mar. 26, 2002).  Defendants point out that an examination of the list itself demonstrates that the list was most likely prepared prior to January 5, 2004 because the list of positions that were recommended to be eliminated have already been eliminated.  (Doc. 96-1 at 4.)  They contend that Bernardi, upon review of the personnel records after his testimony realized that he made an error.  (*Id.* at 5.)  Defendants also contend that this factual dispute is not material since the list at issue might or might not have been the particular list that Defendant Cordaro relied on.  (*Id.* at 3.)  Hence, Defendants argue that Bernardi's declaration should be admitted as a non-party declaration offered in rebuttal to a non-material factual allegation.

In determining whether to grant Defendants' motion for summary judgment, I decided that whether Cordaro relied on Bernardi's  list or not is a disputed fact material enough to survive summary judgment.  Thus, without reaching the merits of the declaration, for the purpose of summary judgment, it will be allowed.

Therefore, Plaintiffs' motion to strike Bernardi's declaration will be denied.

## CONCLUSION

I find that Plaintiffs have submitted sufficient evidence to create a genuine issue of

material fact from which a fact finder could reasonably believe that Plaintiffs' political affiliation was a substantial or motivating factor in their discharge by Defendant Cordaro. Therefore, Defendants' motion for summary judgment will be denied with regards to Plaintiffs' First Amendment, political discharge claim against Cordaro.  I will grant summary judgment as to Defendant Munchak as there is no genuine issues of material fact as to whether he was aware of Plaintiffs' political affiliations and because Plaintiffs stated that they withdrew their claim against him.

I find that Plaintiffs have failed to establish a genuine issue of material fact with respect to whether Plaintiffs had a protected property interest in their employment. Therefore, I will grant Defendants' motion for summary judgment as to Plaintiffs' Fourteenth Amendment, due process claim.  Since there exists issues of material fact as to whether Defendant Cordaro followed the normal deliberative process required by the office when making the determination to terminate Plaintiffs and hire their replacements, I will deny summary judgment as to the claim for municipal liability against the County.

I find that Plaintiff Sharon Wrightson has provided sufficient evidence to create a genuine issue of material fact from which a fact finder could reasonably believe that Defendant Finan was a state actor and that her political association was a significantly motivating reason why he recommended that her position be eliminated.  Therefore, Defendant Finan's motion for summary judgment will be denied.

Finally, I find that Defendants provided sufficient reasons to admit the declaration of Bernardi.  For summary judgment purposes, the declaration of Benardi did not establish that he created the list before January 5, 2004, but that there is a genuine issue of fact as to when the list was created.  Therefore, Plaintiffs' motion to strike Bernardi's declaration will

24

be denied.

An appropriate Order follows.


September 5, 2006                                    /s/ A. Richard Caputo
                                                    A. Richard Caputo
                                                    United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN WRIGHTSON, SHARON        :
WRIGHTSON, LINDA               :
POPLAWSKI, and RYAN            :
SPINELLO,                      :
                               :
        Plaintiffs,            :
                               :        CIVIL ACTION NO. 3:CV-04-0038
            v.                 :
                               :        (JUDGE CAPUTO)
LACKAWANNA COUNTY,             :
ROBERT C. CORDARO, in his      :
individual capacity, and A.J.  :
MUNCHAK, in his individual     :
capacity,                      :
                               :
        Defendants.            :

## ORDER

NOW, this 5th day of September, 2006, **IT IS HEREBY ORDERED** that

  1)   Defendants' Motion for Summary Judgment (Doc. 67) is **GRANTED in part** and **DENIED** in part:

       (a) Defendants' Motion for Summary Judgment is **GRANTED** as to Count I against Defendant Munchak;

       (b) Defendants' Motion for Summary Judgment is **DENIED** as to Count I against Defendant Cordaro;

       (c) Defendants Motion for Summary Judgment is **GRANTED** as to Count II; and

       (d) Defendants Motion for Summary Judgment is **DENIED** as to Count III.

  2)   Defendant James Finan's Motion for Summary Judgment Concerning Liability for Acts Prior to Being a State Actor (Doc. 72) is **DENIED**.

26

3)   Plaintiffs' Motion to Strike the Declaration of Anthony Bernardi From the Summary Judgment Record (Doc. 91) is **DENIED**.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge